CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JAN - 9 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| VISTON SHYROCK MARTIN, | ) | Civil Action No. 7:11-cv-00010 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| R.C. MATHENA, <u>et al.</u>, | ) | By:   Hon. Jackson L. Kiser |
|     Defendants. | ) |        Senior United States District Judge |

Viston Shyrock Martin, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as the correctional defendants R.C. Mathena, Warden of Keen Mountain Correctional Center ("KMCC"), and Fred Schilling, the Health Services Director of the Virginia Department of Corrections ("VDOC") and names as the medical defendants Mr. Whited, a registered nurse, and Lester, a licensed practical nurse ("LPN"). Plaintiff alleges that the defendants were deliberately indifferent to a serious medical need, in violation of the Eighth Amendment of the United States Constitution. The defendants filed motions to dismiss and for summary judgment, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant defendants' dispositive motions and strike the case from the active docket.

I.

The record reveals the following facts in a light more favorable to plaintiff. Prior to March 30, 2010, inmates at KMCC could appear at the medical pill-call window[1] and sign up for a medical appointment, called a "sick call," to be evaluated for an illness. Mathena instituted a policy as of March 30, 2010, that inmates could not request a sick call at the pill-call window but instead must deposit a sick-call request form in a drop box located outside the dining hall before

breakfast. Inmates are not permitted to leave their housing areas to go to the deposit box without prior approval via a medical appointment pass, trip pass, or master pass.

On May 31, 2010, plaintiff experienced "trouble with [his] asthma" and filed a sick call request in the drop box outside the dining hall. Plaintiff noted in the request that he would be in the law library between 9:30 and 10:45 a.m. Plaintiff returned to his housing unit by 11:00 a.m., but staff did not summon him to the medical department for his sick call.

On June 1, 2010, staff returned plaintiff's sick call request with a note saying that he did not show up for his sick call appointment and could refile a sick call request if he still needed to be evaluated. Plaintiff filed an informal grievance the next day to complain that medical staff did not search for him at the law library.

On June 2, 2011, plaintiff filed a second sick call request. Medical staff called for him at 1:40 p.m., and correctional officers escorted him to the medical department. LPN Lester saw plaintiff but told him that she would not treat him and to return the next morning. Correctional officers escorted plaintiff back to his housing area. Later that evening, plaintiff received his sick call request from that morning that said he failed to show up for his medical appointment.

On June 3, 2010, plaintiff filed his third sick call request, stating that he was experiencing "problems with [his] asthma." Later that evening, plaintiff received Nurse Whited's response to his June 1, 2010, informal complaint. Nurse Whited told plaintiff, "[P]er policy you are to stay in your housing unit until called for or it is considered a no show. If you are having problems or concerns report to medical sick call and stay in you[r] cell until called for. That is your responsibility." (Pl.'s Ex. C.)

---

[1] The pill-call window is where inmates queue to receive their various medications.

On June 4, 2010, plaintiff received a response to his third sick call request, telling him that he "must drop this request in [the] orange box outside of chow hall during chow time in the [morning]. If you feel you are having an emergency, request an emergency grievance form." (Pl.'s Ex. F.)

KMCC went on lockdown on June 7, 2010, and inmates were not allowed to leave their housing units until June 16, 2010. Despite the lockdown, plaintiff filed his fourth sick call complaining that has "been experiencing asthma complications." Nurse Whited had the sick call request returned to plaintiff because he did not put it in the drop box, although plaintiff could not leave his housing area and was fed in his cell.

On June 15, 2010, plaintiff filed a regular grievance to Warden Mathena, complaining about having to file four sick call requests and asserting that the lack of medical treatment constituted a violation of the Eighth Amendment. On June 16, 2010, plaintiff experienced an asthma attack and was rushed to the medical department. A nurse examined plaintiff, determined he had an upper respiratory infection, administered a breathing treatment, issued an inhaler, and prescribed an antibiotic and Ibuprofen.

Mathena responded to the regular grievance on July 19, 2010, finding the grievance unfounded, advising plaintiff that he should file an emergency grievance if he experiences an asthma attack, and inmates must remain in their housing units until medical staff call the inmate for a sick call appointment. Plaintiff unsuccessfully appealed Mathena's response to defendant Schilling, arguing that KMCC policy does not require an inmate to stay in his housing area when his sick call request is pending.

3

II.

A. PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE MEDICAL DEFENDANTS.

The medical defendants filed a motion to dismiss. I must dismiss any action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting a plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions. . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1950 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although I liberally construe pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), I do not act as the

4

inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of the complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need to state a claim under the Eighth Amendment for the unconstitutional denial of medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference requires a public official to have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52. A health care provider may be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851.

5

Claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Id. at 105-06. See Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986); Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of his treatment does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee, 797 F.2d at 181-83.

To state an unconstitutional medical treatment claim against non-medical prison personnel, plaintiff must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were deliberately indifferent to the prison physician's misconduct where even a lay person would understand that the medical care provider is being deliberately indifferent. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id. Supervisory liability is not established merely by showing that a subordinate was deliberately indifferent to a plaintiff's medical need. Id.

Plaintiff's four sick-call requests failed to inform LPN Lester and Nurse Whited that he suffered from a substantial risk of serious harm because of his medical condition. Plaintiff wrote, "I'm starting to have trouble with my asthma" in his first request; "I am experience[ing]

6

problems with my asthma" in his second request; "I am experiencing problems with my asthma" in his third request; and "I have been experiencing asthma complications" in his fourth request. (Pl.'s Grievances (no. 1-1) 3, 5, 7-8.) LPN Lester responded to the second request, and Nurse Whited responded to the third and fourth requests.[2] Nothing in these last three requests indicate any serious medical need because plaintiff only generally describes problems related to his chronic asthma. Asthmatic conditions by themselves do not state a serious medical need. See Bates v. Sullivan, 6 F. App'x 425, 428 (7th Cir. 2001) (finding no Eighth Amendment claim when plaintiff alleged only that he was suffering breathing problems when he requested and denied his inhaler and that he suffered shortness of breath and headaches); Hill v. O'Brien, No. 7:08-cv-00283, 2011 WL 1238038, at *7 (W.D. Va. Apr. 4, 2011) (finding no constitutional deprivation when an inmate repeatedly asked for an inhaler, did not describe a serious symptom, and was deprived of an inhaler for only a short time); Harris v. Anderson, No. 2:07-cv-00186, 2009 WL 1850446 *4 (E.D. Tenn. June 26, 2009) (finding no constitutional claim when the inmate did not inform medical staff he was actually suffering an asthma attack); Blount v. Williams, No. 7:05-cv-00556, 2007 WL 951555, at *9 (W.D. Va. Mar. 23, 2007) (finding plaintiff's exacerbated asthma symptoms, which allegedly required him to use his inhaler more frequently, were not sufficiently serious to state an Eighth Amendment violation); Carlisle v. Goord, No. 9:03-cv-00296, 2007 WL 2769566, at *14-15 (N.D.N.Y. Sept. 21, 2007) (plaintiff's asthma condition was not sufficiently serious for purposes of the Eighth Amendment); Stoneman v. Thompson, No. 3:03-cv-00716, 2005 WL 3881432, at *4 (E.D. Va. Apr. 19, 2005) ("The record does not indicate that plaintiff's asthma was a serious condition[.]"), aff'd, 142 F. App'x

---

[2] Staff not involved with this litigation replied to plaintiff's first request.

167 (4th Cir. 2005). Staff told plaintiff to file an emergency grievance if he believed his asthma was a critical problem, but plaintiff instead refiled sick call requests, not an emergency grievance. Medical staff promptly evaluated and treated plaintiff when plaintiff ultimately experienced an asthmatic attack.

Plaintiff fails to allege facts to show that either LPN Lester or Nurse Whited were deliberately indifferent to a serious medical need because they were not "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] . . . also dr[e]w the inference." Farmer, 511 U.S. at 837. To the extent plaintiff alleges that LPN Lester and Nurse Whited failed to comply with VDOC policies, a claim that officials have not followed their own policies or procedures does not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). See also Belcher v. Oliver, 898 F.2d 32, 36 (4th Cir. 1990) ("[F]ailure to follow procedures established for the general protection and welfare of inmates does not constitute deliberate disregard for the medical needs of a particular [inmate]."). Accordingly, plaintiff fails to state a claim upon which relief may be granted against LPN Lester and Nurse Whited, they are entitled to qualified immunity, and I grant their motion to dismiss. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (stating defendant governmental official receives qualified immunity if a plaintiff fails to describe how the official violated the plaintiff's constitutional or statutory right).

8

Case 7:11-cv-00010-JLK-RSB   Document 37   Filed 01/09/12   Page 8 of 14   Pageid#: 310

B.  THE CORRECTIONAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.

The correctional defendants filed a motion for summary judgment. A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky.

---

[3] The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). The party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot rely on a response to a motion for summary judgment to act as an amendment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 & n.16 (4th Cir. 2008) (No. 07-1084), available at 2008 WL 238562, at *6, 2008 U.S. App. LEXIS 1916, at *18-20 (noting that other circuits similarly prohibit a plaintiff from raising new claims in opposition to summary judgment and noting that district courts within the Fourth Circuit have adopted Gilmour).

10

The correctional defendants argue that plaintiff failed to exhaust his administrative remedies about KMCC policies.[4] Besides describing his multiple sick call requests, plaintiff alleged in his regular grievance, inter alia, that he "filed an informal complaint about this created KMCC system for sick call that denied and delays access to medical care by the use of a medical drop box and the KMCC delegated authority to security staff who were not medically trained professionals who use their own opinionated diagnosis in determining if a medical problem is serious enough to allow an inmate to go to medical." (Pl.'s Grievances 10.)

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under § 1983 . . ., by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory, Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life[,]" Porter v. Nussle, 534 U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Where the prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). An inmate's failure to exhaust is an affirmative defense, and the burden is on the defendant to prove the failure to exhaust. Jones v. Bock, 549 U.S. 199, 216 (2007).

---

[4] The correctional defendants admit that plaintiff exhausted administrative remedies about his repeated sick call requests and Lester's and Whited's responses to them.

11

VDOC Operating Procedure ("OP") 866.1, "Inmate Grievance Procedure," is a mechanism for inmates to resolve complaints, appeal administrative decisions, and challenge policies and procedures. The process provides correctional administrators means to identify potential problems and, if necessary, correct those problems in a timely manner. All issues are grievable except issues about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing penalties and/or procedural errors; state and federal court decisions, laws, and regulations; and other matters beyond the VDOC's control.

Inmates are oriented to the inmate grievance procedure when they enter the VDOC. Prior to submitting a grievance, the inmate must demonstrate that he has made a good faith effort to informally resolve his complaint by submitting an informal complaint form available in housing units. If not resolved, the inmate must file a regular grievance within thirty calendar days from the date of occurrence or incident. Only one issue per grievance will be addressed. Regular grievances may receive three levels of review. A facility's Warden or Superintendent conducts the first, "Level I" review of the grievance. If the inmate is dissatisfied with the Level I review, he may appeal the determination to Level II, which is done by the Regional Director. For most issues, Level II is the final level of review. For the few issues appealable to Level III, the Deputy Director or Director of the VDOC conducts the final review of the regular grievance.

Plaintiff exhausted administrative remedies about repeatedly requesting sick call evaluations, but he did not file a regular grievance about either OP 720.1[5] or the institutional policy or practice of requiring inmates to remain in their housing units until called by medical

---

[5] OP 720.1 is the VDOC's comprehensive policy describing methods for inmates to access health services at different levels of security.

staff for their sick call appointments. Plaintiff may only complain about one issue per grievance, and he used his regular grievance to complain about his repeated sick call requests and alleged failure to provide medical care. Plaintiff's brief description of his dissatisfaction with using a drop box and needing passes from correctional officers did not alert prison officials that his grievance included OP 720.1 or having to stay in his housing unit until called for his medical appointment.[6] Plaintiff's failure to submit separate grievances about the policies requiring inmates to deposit sick-call request forms in a drop box located outside the dining hall before breakfast or to remain in a housing unit until called for a medical appointment did not alert prison officials of these issues. Accordingly, plaintiff did not properly exhaust available administrative remedies about VDOC and facility policies, and the correctional defendants are entitled to summary judgment.

The court finds that even if he had exhausted available administrative remedies, plaintiff fails to state any claims against the correctional defendants. Plaintiff claims that correctional officers improperly screen medical requests, but he fails to relate the correctional defendants to this claim. Plaintiff does not name any relevant correctional officer as a defendant, and he acknowledges that correctional officers permitted him to go the medical department. Neither Mathena nor Schilling had any personal involvement with plaintiff's medical care or were aware that plaintiff had any difficulty scheduling a medical appointment. Plaintiff acknowledges that Schilling did not create the facility policy of which plaintiff complains.

---

[6] Plaintiff challenged OP 720.1 for the first time in his appeal of the Level I review. Any "issue not addressed in the original grievance will not be considered in an appeal." (OP 866.1 (no. 30-3) 3.) Therefore, plaintiff's discussion of OP 720.1 in the appeal of his regular grievance does not constitute proper exhaustion of his administrative remedies according to OP 866.1.

13

Plaintiff also fails to establish how the drop-box policy violates plaintiff's constitutional rights, especially since plaintiff does not have a constitutional right to access a grievance or medical call system. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). See, e.g., Sandin v. Conner, 515 U.S. 472, 484, 486-87 (1995). Plaintiff is constitutionally entitled to medical care to prevent cruel and unusual punishment but not access to a logistical system created by state officials to prevent cruel and unusual punishment. The record establishes that defendants were not deliberately indifferent to a serious medical need, and plaintiff's complaints about accessing the medical appointment procedures do not present a constitutional claim.[7]

III.

For the foregoing reasons, I grant the medical defendants' motion to dismiss and the correctional defendants' motion for summary judgment. Plaintiff's motion to preserve is denied as moot, and plaintiff's motion for sanctions is denied as meritless.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for the defendants.

**ENTER**: This 9th day of January, 2012.

Senior United States District Judge

---

[7] Thus, Mathena and Schilling are also entitled to qualified immunity. See Saucier, 533 U.S. at 200-01 (stating defendant governmental official receives qualified immunity if a plaintiff fails to describe how the official violated the plaintiff's constitutional or statutory right).